**TEXAS EASTERN TRANSMISSION CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Algonquin Gas Transmission Company; Associated Natural Gas Company a Division of Arkansas Western Gas Company; Baltimore Gas and Electric Company; Bay State Gas Company, et al.; Brooklyn Union Gas Company; Carnegie Natural Gas Company; Central Hudson Gas & Electric Corporation; CNG Transmission Corporation; Columbia Gas Transmission Corporation; Equitable Gas Company, a Division of Equitable Resources, Inc.; Equitrans, Inc.; Indiana Gas Company, Inc.; Long Island Lighting Company; Municipal Defense Group; National Fuel Gas Supply Corp.; New Jersey Natural Gas Company; Orange & Rockland Utilities, Inc.; Pennsylvania Public Utility Comm.; Public Service Commission of New York; Public Service Electric & Gas Co., Intervenors.

**BAY STATE GAS COMPANY, et al., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Associated Natural Gas Company; Brooklyn Union Gas Company; Algonquin Gas Transmission Co.; Columbia Gas Transmission Corp.; Municipal Defense Group; New Jersey Natural Gas Company; Texas Eastern Trans. Corporation; Equitrans, Inc.; Carnegie Natu-

ral Gas Company; Baltimore Gas and Electric Company; National Fuel Gas Supply Corp.; Central Hudson Gas & Electric Corp.; Long Island Lighting Company; Orange and Rockland Utilities, Inc., Intervenors.

Nos. 91–1136, 91–1172.

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1992.

Decided June 26, 1992.

Rehearing Denied Aug. 28, 1992.

Judy M. Johnson with whom Henry S. May, Jr., John E. Kennedy, D. Virginia Smith and F. Nan Wagoner for Texas Eastern Transmission Corp., Gearold L. Knowles with whom Edward J. Finn and Shaheda Sultan, for Bay State Gas Co., et al., and J. Richard Tiano, for Southern Connecticut Gas Co. were on the joint brief, for petitioners in Nos. 91–1136 and 91–1172 and intervenors in Nos. 91–1172 and 91–1136 respectively.

Joel M. Cockrell, Atty., F.E.R.C., with whom William S. Scherman, Gen. Counsel, Jerome M. Feit, Sol. and Joseph S. Davies, Deputy Sol. were on the brief, for respondent in Nos. 91–1136 and 91–1172.

Timothy N. Black, with whom John H. Pickering, Gary D. Wilson, Susan D. McAndrew, Giles D.H. Snyder, and Stephen J. Small, for Columbia Gas Transmission, William H. Roberts, for Equitable Gas Co., Karol Lyn Newman and Michael G. Lepre, for Carnegie Natural Gas Co., and Robert S. Fleishman and Andrew P. Mosier, Jr. for Baltimore Gas and Elec. Co. were on the joint brief, for intervenors in support of respondents in both cases. Mark D. Clark and Mark A. MacDougall also entered appearances, for intervenors.

Michael W. Hall, Roderick D. Strickland, and Kenneth J. Maloney, for Brooklyn Union Gas Co., O. Julia Weller, for Long Island Lighting Co., George L. Weber, for National Fuel Gas Supply Corp., Ronald E. Christian and John R. Talley, for Indiana Gas Company, Inc., Victor A. Roque and Edward B. Myers, for Orange & Rockland Utilities, Inc., Stanley W. Balis, Mark C. Darrell for Municipal Defense Group, Rebecca S. Haney for Algonquin Gas Transmission Co., and Joseph M. Oliver, Jr., for New Jersey Natural Gas Co. were on the joint brief, for intervenors in both cases. Kenneth L. Glick, James F. Mattia, Jr., and Gerard A. Maher also entered appearances, for intervenors.

Frederick J. Killion, and Donald J. Dankner entered appearances for intervenor Central Hudson Gas & Elec. Co. in Nos. 91–1136 and 91–1172.

Kenneth D. Brown entered an appearance, for Public Service Electric and Gas Co. in No. 91–1136.

Gary E. Guy and Frank H. Markle entered appearances, for intervenor Equitrans, Inc. in Nos. 91–1136 and 91–1172.

David D'Alessandro and Richard A. Solomon entered appearances, for intervenor The Public Service Com'n of New York in No. 91–1136.

Steven A. Weiler and Don S. Smith entered appearances, for intervenor Associated Natural Gas Co. in Nos. 91–1136 and 91–1172.

Lawrence F. Barth, Veronica A. Smith and John F. Povilaitis entered appearances, for intervenor Pennsylvania Public Utility Com'n in No. 91–1136.

James L. Blasiak, Mark G. Magnuson, Kevin J. Lipson, and Charles C. Thebaud entered appearances, for intervenor CNG Transmission Corp. in No. 91–1136.

Before: SILBERMAN, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

As followers of the take-or-pay saga well know, interstate natural gas pipelines incurred huge take-or-pay liabilities in the mid–1980s. The liabilities arose because the pipelines' gas purchase contracts required them to buy gas at prices that, because of changed market conditions, they could not pass forward to their customers at the times when they were obliged to buy the gas (or pay for quantities that they did not take). See generally *Associated Gas Distributors v. FERC*, 824 F.2d 981, 1020–30 (D.C.Cir.1987) ("*AGD I*").

We deal here with a small corner of the problem. Texas Eastern is an interstate gas pipeline supplied in part by other pipelines that themselves incurred take-or-pay liability. Texas Eastern's pipeline suppliers entered into settlements with Texas Eastern (and other customers), imposing charges on them for these liabilities—charges calculated in accordance with the methodology prescribed by the Federal Energy Regulatory Commission in its Order No. 500, III FERC Stats. & Regs., Regulations Preambles ("Regulations Preambles") ¶ 30,761 at 30,784–92 (1987). This court later found the use of that methodology to violate the "filed rate" doctrine. See *Associated Gas Distributors v. FERC*, 893 F.2d 349 (D.C.Cir.1989) ("*AGD II*").

Texas Eastern seeks to pass the costs through to its customers in accordance with the Order No. 500 methodology. It may do so, it argues, because a 1988 settlement with its customers resolved to handle the passthrough in that manner. *If* the settlement in fact adopted that resolution, Texas Eastern and the Commission agree that it is not affected by the court's *AGD II* remand, or by the Commission's efforts to provide an alternative approach; the settlement's resolution should go into effect unencumbered by filed rate objections. See Order No. 528, 53 FERC ¶ 61,163 at 61,594 (1990). The Commission, however, construed the 1988 settlement as falling far short of a resolution in accordance with the Order No. 500 methodology. We find no basis for upsetting its conclusion.

\* \* \*

■ The key issue is the relation between the Order No. 500 methodology and Texas Eastern's 1988 settlement. In Order No. 500 the Commission adopted a complicated set of guidelines to govern pipeline take-or-pay recovery. Only two elements need detain us. First, it specified that the allocation was to be in accord with a so-called "cumulative deficiency" or "cumulative deficiency of purchases" method. See Regulations Preambles, ¶ 30,761 at 30,785, 30,787. The method called for identifying a "base" period of purchases, and allocating liability to each customer in proportion to the amount by which its purchases in the take-or-pay accrual period fell short of that baseline. It thus implemented a premise that customers (to the extent responsible for the liabilities at all) incurred responsibility by cutting back their purchases; the higher the cutback, the higher the responsibility. Second, Order No. 500 under certain circumstances allowed the pipeline to recover part of these amounts by a "demand surcharge" that would be independent of the customer's current contract demand or actual purchases. See *id.*; see also *AGD II*, 893 F.2d at 356.

In *AGD II* we found the Order No. 500 methodology to be a violation of the filed rate doctrine, laying particular stress on its combining (1) computation of the charge by reference to past purchases and (2) application of those charges regardless of the

customer's current contract demand or purchases. See *id.* at 354–57.

The Commission responded to *AGD II* with Order No. 528, 53 FERC ¶ 61,163 (1990). This stayed the effectiveness of tariffs providing for assessment of "fixed charges or direct bills to recover take-or-pay settlement costs on the basis of a purchase deficiency allocation method". *Id.* at 61,598. It also laid out rather general guidelines within which it directed pipelines and their customers to seek to negotiate settlements. *Id.* at 61,596–98. The Commission noted, however, that some pipelines had "settlements approved by the Commission under which their customers have agreed to the allocation of take-or-pay costs and waived any objections on the basis of the filed rate doctrine (or the similar doctrine prohibiting retroactive ratemaking)." *Id.* at 61,594. "Such proceedings", it said, "are not affected by the court's remand or this order." *Id.* Accordingly, it explicitly exempted such pipelines from the stay of collections, listing them by name in the Order's Appendix A. *Id.* at 61,598.

Texas Eastern did not make the list. Claiming that a sentence in a 1988 settlement with its customers qualified it for exemption under the principles set forth in Order No. 528, it filed a motion seeking to be included, which the Commission denied. Order Denying Motion, 53 FERC ¶ 61,375 (1990). Joined by some of its customers, it petitioned for rehearing, which the Commission also denied. Order on Rehearing, 54 FERC ¶ 61,151 (1991). Texas Eastern and the customers that joined the petition for rehearing have petitioned for review here.

■■ Before turning to the language on which Texas Eastern rests its claim, we note that although a settlement is a kind of contract, it is a specialized one, so that the Commission brings to the interpretation both its expertise and the authority delegated by Congress, establishing it "as the primary adjudicator in this field". *National Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1571 (D.C.Cir.1987); see generally *id.* at 1569–72 (citing *Chevron U.S.A.*

*Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Besides, where an agency has approved an agreement between private parties, as here, that agreement is "closely akin to an order of the Commission". *Cajun Electric Power Cooperative, Inc. v. FERC*, 924 F.2d 1132, 1135 (D.C.Cir.1991). "But this is deference, not abdication." *National Fuel Gas Supply*, 811 F.2d at 1572.

In claiming that the 1988 settlement entitled it to the exemption provided by Order No. 528, Texas Eastern relies on the following sentence:

> In seeking to recover pipeline supplier "take-or-pay costs" other than through Seller's gas supply inventory reservation charge mechanism, Seller will file to recover such costs based on an *appropriate allocation methodology* to be determined at the time but *which recognizes* and takes into account *the responsibility of all sales customers during the relevant time periods* for the "take-or-pay costs" which were incurred by Seller's pipeline suppliers and the relevant time period during which Seller's pipeline suppliers entered into contracts to serve particular sales customers.

Joint Appendix ("J.A.") at 54–55 (emphasis added).

As the Commission observed, Order Denying Motion, 53 FERC at 62,315, this sentence does not explicitly refer to the purchase deficiency methodology. Nor does it refer to cumulative deficiencies, base periods, or to any general principle that payment shall be made in accordance with a customer's shortfall in purchases. It certainly does not refer to Order No. 500 itself, the then-existing authoritative blessing for the deficiency method. The phrase "an appropriate allocation methodology" seems to be only a statement of intent to adopt some such methodology, not an adoption of one, nor a specification of how a methodology might be judged "appropriate".

From Texas Eastern's perspective, the most promising language is that requiring that the methodology be one that "takes

into account the responsibility of all sales customers", and then proceeds to mention two "time periods": (1) the "time periods for the take-or-pay costs' which were incurred by Seller's pipeline suppliers" and (2) the "time period during which Seller's pipeline suppliers entered into contracts to serve particular sales customers during the relevant time periods". The references seem dimly related to the deficiency method's identification of a base period and a later period of take-or-pay accrual. But only dimly: there is no suggestion that the key measurement is the *difference* in customer "takes" in the two periods (the essence of the deficiency method).

Further, we note that the sentence says nothing about how the amount calculated is to be collected—it appears as consistent with collection by volumetric surcharge (dependent upon the customer's takes at the time the surcharge is being collected) as with the sort of "demand surcharge" that was employed by Order No. 500 and was an object of the *AGD II* court's concern in finding a filed rate violation.

The Commission, it is true, does not offer an affirmative interpretation of the disputed sentence. But we think that quite natural, since all that was necessary was to determine that it did not adopt the Order No. 500 method. The Commission has noted that the sentence may prove relevant in selecting "a revised allocation method" for Texas Eastern and its customers. See Order on Rehearing, 54 FERC at 61,481.

When we look to the overall context of the disputed sentence, the reasonableness of the Commission's decision seems inescapable. By the 1988 settlement the parties (Texas Eastern and its customers) sought "final approval of two provisions" of proposed new service agreements, *first,* "a Gas Supply Inventory Reservation Charge (the "GSIRC") which is essential if Texas Eastern is to remain a long-term merchant of natural gas"; *second,* the legal standard of care Texas Eastern must

meet in performing its gas supply obligations. See Initial Comments of Texas Eastern Transmission Corporation in Support of Joint Offer of Settlement (June 15, 1988) at 2. Accordingly, Texas Eastern explained to the Commission that the settlement allowed it to seek recovery for non-GSIRC take-or-pay costs, through "the normal course of proceedings under the Natural Gas Act in which customers, interested state commissions, and the Commission Staff *can protest, concur or otherwise plead* with respect to the prudency [*sic*] of Texas Eastern's recovering such costs." *Id.* at 17 n. 6 (emphasis added).

In fact, at the time the settlement was reached, Texas Eastern had pending before the Commission tariff sheets by which it sought to recover take-or-pay costs that one of its suppliers, United Gas Pipeline, had passed through to it under the Order No. 500 method. These were docketed with the Commission as RP88–80, and various parties, including customers, had attacked the proposal as a violation of the filed rate doctrine. Yet the customers did not withdraw their filed rate objections to Texas Eastern's passthrough proposal; they continued to protest them, just as Texas Eastern's assurance said they might. And the settlement makes no mention of RP88–80, a silence that is especially telling as the settlement defined its scope as a "settlement of the issues in the *captioned* proceedings," Appendix A of Joint Offer of Settlement, p. 2 (emphasis added), and Section V of the settlement limited its effect to the matters "expressly provided for herein." [1]

The Commission's construction of the settlement appears eminently reasonable.

\* \* \*

■ Texas Eastern makes two subsidiary claims. First, it says that it made certain filings of amended passthrough *amounts* pursuant to its basic effort, manifested in the RP 88–80 filing, to use the

---

1. The whole sentence is: "The provisions of this Joint Settlement are intended to relate only to the specific matters referred to herein, and by agreeing to this Joint Settlement, no Party waives any claim or right which it may other-

wise have with respect to any matters not expressly provided for herein." Brief for Intervenors in Support of Respondent at 6–7 (citing Joint Offer of Settlement, Appendix B).

Order No. 500 methodology to pass through upstream suppliers' take-or-pay costs. As its customers failed to protest these amending filings, it argues that its use of the Order No. 500 methodology was embedded in final, unappealable orders, and thus exempt from *AGD II* and the Commission's efforts to unscramble that omelet. The Commission rejected the argument, saying that the customers did not lose their objection to the basic methodology by failing to protest these adjustments in amount. Order Denying Motion, 53 FERC at 62,315–16. We can see no reasonable objection to that view.

Second, Texas Eastern argues that under the terms of its tariff, its refund liability as to its suppliers' take-or-pay costs is limited to amounts it receives as refunds from its suppliers, resting on certain clauses that are directed to its treatment of such refunds. But the language does not support the negative pregnant that Texas Eastern would read in, completely overturning its duty to make refunds of charges collected in violation of law. See Order Denying Rehearing, 53 FERC at 62,315; Order on Rehearing, 54 FERC at 61,481.

\*     \*     \*

The petition for review is

*Denied.*