**ASSOCIATED GAS DISTRIBUTORS, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**And Consolidated Cases.**

**No. 88–1385.**

United States Court of Appeals, District of Columbia Circuit.

March 30, 1990.

ON PETITIONERS' SUGGESTION FOR REHEARING EN BANC

Before WALD, Chief Judge; MIKVA, EDWARDS, RUTH BADER GINSBURG, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG, SENTELLE and THOMAS, Circuit Judges.

**ORDER**

PER CURIAM.

The Suggestions for Rehearing En Banc of the various parties have been circulated to the full court. The taking of a vote was requested only on the issue of whether the equitable sharing mechanism mandated by respondent in Order No. 500 violates the filed rate doctrine. Thereafter, a majority of the judges of the court in regular, active service did not vote in favor of rehearing *en banc*. Upon consideration of the foregoing it is

ORDERED by the Court *en banc* that all of the suggestions are denied.

Circuit Judges D.H. GINSBURG and CLARENCE THOMAS did not participate in this order.

A statement of Circuit Judge STEPHEN F. WILLIAMS concurring in the denial of rehearing *en banc* is attached.

A statement of Chief Judge WALD dissenting from the denial of rehearing *en banc,* joined by Circuit Judges MIKVA and HARRY T. EDWARDS, is also attached.

WILLIAMS, Circuit Judge, concurring in denial of rehearing and rehearing *en banc:*

I write here only to correct what seems to be a misconception about the scope of our holding regarding the filed rate doctrine.

We have not always clearly distinguished between the filed rate doctrine and the retroactive ratemaking doctrine, doubtless because they often overlap. Although labeling at this advanced state of the doctrines' lives may be arbitrary, the following strikes me as sensible. Under the filed rate doctrine, a regulated entity may not charge, or be forced by the Commission to charge, a rate different from the one on file with the Commission for a particular good or service. Subject only to refunds provided for under § 4 of the Natural Gas Act, 15 U.S.C. § 717c (1988), this rule holds whether the attempted surcharge or rebate occurs at the time of service, *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 581, 101 S.Ct. 2925, 2932, 69 L.Ed.2d 856 (1981), or at some later time, *Columbia Gas Transmission Corp. v. FERC,* 831 F.2d 1135 (D.C.Cir.1987); *Public Utilities Commission of California v. FERC,* 894 F.2d 1372, 1382–83 (D.C.Cir.1990); *Associated Gas Distributors v. FERC,* 893 F.2d 349, 354–57 (D.C.Cir.1989); cf. *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 618, 64 S.Ct. 281, 295, 88 L.Ed. 333 (1944) (no reparation order for past rates found unjustly or unreasonably high). As a necessary corollary to that rule, we must ask to what a new proposed charge *relates.* Otherwise we cannot know whether it is in addition to the rate already charged for some past service or is instead a charge for current service. In this context, whether the *cost* sought to be recovered is past or current is not directly relevant, contrary to the contentions of some petitions for rehearing. If current gas costs surged, for example, and the Commission responded by authorizing a surcharge on individual customers' 1984 takes, the violation of the filed rate doctrine would be plain.

The retroactive ratemaking doctrine, on the other hand, focuses on how the current rate is determined. Under this doctrine, the Commission is prohibited from adjusting current rates to make up for previous over- or undercollections of costs in prior periods. The retroactive ratemaking doctrine is thus a logical outgrowth of the filed rate doctrine, prohibiting the Commission from doing indirectly what it cannot do directly. The Commission may not allow a utility to "recoup past losses," *City of Piqua v. FERC,* 610 F.2d 950, 954 (D.C.Cir. 1979), nor may it force a utility to reduce its current rates to make up for overcollections in previous periods. See *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 595–96, 618, 64 S.Ct. 281, 284–85, 295, 88 L.Ed. 333 (1944) (because it is unlawful for Commission to issue reparation order for past excessive rates, utility cannot be "person aggrieved" within meaning of § 19(b) of Natural Gas Act as a result of Commission's incidental findings of such excesses); cf. *Public Utilities Commission of California,* 894 F.2d at 1382. To allow such adjustments would cause current rates to be either unreasonably high or low. The Commission may not disinter the past merely because experience has belied projections, whether the advantage went to customers or the utility; bygones are bygones. After-the-fact adjustments would also upset the balance effected by §§ 4 and 5. While § 4's refund provision protects the customers from a rate that is unreasonably high when filed (examined as of the filing), § 5's requirement that relief be prospective only assures the utility that rates passing scrutiny under § 4 will not be undone. Finally, as the utility keeps cost savings and bears excess costs, it has an incentive to efficient operation. It is for purposes of this doctrine that a court must ask whether the costs are past.

Some petitions for rehearing suggest that the panel decision represents a peculiarly aggressive application of the filed rate doctrine. It is hard, however, to see how that rule would retain any force if the proposed purchase deficiency charge were allowed. It is virtually indistinguishable from the Commission's substituting in 1988 a new rate schedule for gas purchased in 1983–86. It applies to customers who leave the system, including one that filed for

abandonment *before* its supplier pipeline filed its "equitable sharing" rate. See panel decision, 893 F.2d at 356 n. 1, and *United Gas Pipe Line Co.*, 47 FERC ¶ 61,163 (1989). Under *United,* the period of entitlement subjecting a customer to the charge, i.e., between the pipeline's filing the rate and completion of the customer's abandonment proceedings, could be as little as one day or one hour. Thus the charge is not only pegged precisely to customer takes (or failures to take) in the long past deficiency period, but its relation either to current entitlements or takes is only nominal. The conclusion seems inescapable that as conceived by the Commission it is a charge for gas service in the 1983–86 period and as such violates the filed rate doctrine.

WALD, Chief Judge, with whom MIKVA and HARRY T. EDWARDS, Circuit Judges, join:

We would vote to hear *en banc* the issue of whether the equitable sharing mechanism mandated by the FERC in Order No. 500 violates the filed rate doctrine.

It is not at all clear that as it applies to consumers "let off the hook" by Order No. 436, the equitable sharing mechanism invoked by the Commission in Order No. 500 violates the filed rate doctrine. Prior to Order No. 436, pipeline companies had entered into take-or-pay contracts with producers to track the contracts they had or expected to enter into with consumers. These contracts with the consumers presumably specified that the consumers would be paying Y price for X amount of gas. Order No. 436, however, allowed the consumers to break the contracts prior to purchasing the amount of gas specified in the contracts. Thus, the consumers were in effect getting Z amount of gas (where Z is less than X) for the same "bulk rate" price. In other words, they got a windfall. The FERC, then, did not "revise" these rates; circumstances subsequent to the signing of the contracts between the consumers and the pipelines altered the deal—and, in effect, the rate—originally agreed to by the consumers. The FERC's decision to reallocate some of these current costs did not violate the filed rate doctrine be-cause the deal originally agreed to by the consumers had already been abrogated by the FERC. Neither the purchase decisions to which the consumers' original costs were attached nor the rates pursuant to them were still valid. It was a brand new world: there were no "old rates" to change.

In a time when the structure of the natural gas industry is undergoing a sea change, the FERC must be granted considerable discretion to ensure that the transition period is handled in a manner that minimizes the disruption in the industry. This court itself, in remanding Order No. 436, instructed the FERC to do something about the pervasive take-or-pay contracts that hindered pipelines from making the move from an entrepreneurial to a common carrier status. The FERC's resultant Order No. 500 seems to us to be a good faith, and not unreasonable, response to the mandate.

The panel's overly rigid interpretation of the filed rate doctrine to invalidate that Order leaves the FERC essentially powerless to take care of the take-or-pay crisis. The panel suggests that if pipelines wish to share their multi-billion dollar loss with consumers, they must do so by adding a surcharge to future sales. In a competitive market, of course, the "take-or-pay" pipelines will not be able to do this since such surcharges would raise their prices to an uncompetitive level. But even if some costs could be passed on to future consumers, that would still mean that total losses would be allocated *in* equitably. Those consumers who are in a position to take advantage of open-access shipping will bear proportionately less of the loss than those who cannot—even though the former (by switching to other pipelines) are the ones responsible for the loss.

The significant effect of the invalidation of Order No. 500 on the functioning of the industry and on the FERC's ability to regulate this "quiet revolution" in the gas industry certainly seems important enough to warrant our *en banc* consideration.