ARCHER DANIELS MIDLAND
COMPANY, Appellant,

v.

STATE of Iowa, DEPARTMENT OF
COMMERCE, UTILITIES DIVISION
a/k/a Iowa Utilities Board, Appellee,

and

State of Iowa, Department of Justice,
Consumer Advocate Division, and
Iowa–Illinois Gas & Electric Company,
Intervenors–Appellees.

No. 90–1618.

Supreme Court of Iowa.

May 13, 1992.

As corrected on Denial of Rehearing
June 18, 1992.

Stuart W. Conrad, Paul S. DeFord and
Cynthia W. Scherb of Lathrop Norquist &
Miller, Kansas City, Mo., and Todd A. El-
verson, Des Moines, for appellant.

Susan Allender, General Counsel, and Di-
ane Munns, Deputy General Counsel, for
appellee Utilities Bd.

James R. Maret, Consumer Advocate,
and Daniel J. Fay, Des Moines, for inter-
venor-appellee Consumer Advocate.

Brent E. Gale and Robert P. Jared, Dav-
enport, for intervenor-appellee Iowa–Illi-
nois Gas & Elec. Co.

Considered by LARSON, P.J., and
SCHULTZ, CARTER, NEUMAN and
SNELL, JJ.

NEUMAN, Justice.

At the heart of this outwardly complex
utility rate case lies a relatively simple
question: Did the Iowa Utilities Board vio-
late the rule against retroactive ratemak-
ing when it permitted Iowa–Illinois Gas &
Electric Company to use its industrial cus-
tomers' historic purchasing data as the ba-
sis for allocating current gas pipeline sur-
charges authorized by the Federal Energy
Regulatory Commission? The district
court, ruling on a petition for judicial re-
view of the agency's action, found no viola-
tion. We agree with the district court and
affirm.

*Background.*

This case involves three major players in
the natural gas industry: the *producer*
that provides natural gas at the wellhead;
the *interstate pipeline company* that sells
and transports the gas wholesale; and the
*local distribution company* (LDC) that
sells the gas at retail to commercial and
residential consumers. Pipeline rates and
contracts are regulated by the Federal En-
ergy Regulatory Commission (FERC). The
rates imposed by an LDC upon its retail
customers are regulated by state agencies
such as the Iowa Utilities Board.

The controversy before us centers on
costs known in the natural gas industry as
"take-or-pay" charges. These charges
have their origin in the energy crisis of the
1970's. The widely-held concern of an im-
pending natural gas shortage, combined

with federal regulations requiring pipelines to maintain supply reserves of up to twelve-years' projected demand, created a seller's market for producers. They responded with high-priced take-or-pay contracts which committed the pipelines to pay for a minimum volume of natural gas in a given year, regardless of the volume actually taken.

Natural gas consumers reacted to this threatened energy shortage by conserving or switching to less expensive alternate fuels. At about the same time, the federal government attempted to change the industry's pricing structure from wholly regulated to more market-based. To implement this anti-monopolistic shift, FERC granted local distribution companies and industrial end-users the right to purchase natural gas directly from producers at the wellhead. This "open access" approach suddenly enabled LDCs and natural gas customers to purchase gas on the spot market, using the pipeline only for transporting the spot-purchased gas. This dramatically reduced the pipelines' gas sales, thereby increasing their take-or-pay liabilities.

Natural gas prices subsequently fell. To respond to the pipelines' burden of buyout or buydown settlement costs associated with accrued take-or-pay liability, FERC issued regulations permitting pipelines to (1) recover volumetric credits from producers seeking to transport gas on the pipeline to offset take-or-pay obligations, and (2) absorb up to fifty percent of their take-or-pay costs and assess an equivalent amount to LDC customers through a fixed surcharge measured by the LDC's purchases in a deficiency period as compared to purchases in a prior base period. *See* 18 C.F.R. 2.104 (1987). It is this second alternative, and the "purchase deficiency" rate design it implicates, that brings the parties before this court.

Natural Gas Pipeline Company of America (NGPL), one of the interstate pipeline companies that serves intervenor-appellee Iowa–Illinois Gas & Electric Company, filed a take-or-pay plan with FERC in which it proposed to absorb fifty percent of its take-or-pay costs and recover the remainder from its LDC customers (such as Iowa–Illinois) over a thirty-six-month period. The surcharge would be based on the LDC's purchase deficiency from January 1986 through April 1988, as compared to a base period of January 1983 through December 1985. This deficiency period represented a time during which purchases of natural gas from NGPL decreased sharply because the commodity rate exceeded spot gas prices.

The record reveals that the Iowa Utilities Board, recognizing the potential for substantial consumer savings, had encouraged spot market purchases by ordering Iowa–Illinois to open its system to transportation of customer-owned spot gas. It also urged Iowa–Illinois to purchase spot market gas for its own system supply. Thus beginning in 1986, Iowa–Illinois and its customers, including appellant ADM, bought substantial quantities of spot market gas for delivery on NGPL's pipelines. Virtually all of the purchase deficiency that formed the basis for NGPL's surcharge was caused by these spot market purchases. The record further reveals that all of the savings achieved through these economic purchases were passed along to Iowa–Illinois' customers and not retained by it.

FERC docketed NGPL's take-or-pay filing and allowed NGPL to implement the purchase deficiency recovery plan subject to refund. NGPL began billing Iowa–Illinois for its share of the take-or-pay costs with its May 1988 invoice.

Iowa–Illinois responded by filing with the Iowa Utilities Board (board) a request for permission to recover the NGPL take-or-pay surcharge from its customers as a purchased gas adjustment. Iowa Code section 476.6(11) (1989) authorizes such an automatic adjustment to enable a utility to pass through, without formal rate hearings, fuel cost increases over which it has no control. *Peoples Natural Gas Co. v. Iowa State Commerce Comm'n*, 382 N.W.2d 452, 454 (Iowa 1986). Iowa–Illinois proposed that the costs be recovered from its transportation customers (such as ADM) using the same purchase deficiency methodology used by NGPL to compute Iowa–

Illinois' liability; other Iowa–Illinois customers would be charged on a volumetric basis for that portion of the take-or-pay charges not billed to the transportation class. The board entered an interim order permitting the plan to go into effect, subject to refund, while it pondered whether Iowa–Illinois could collect these charges from its customers and, if so, what rate design would be employed.

The board ultimately determined that it was appropriate for Iowa–Illinois to recover the take-or-pay surcharge as an automatic purchased gas adjustment, subject to reconciliation for overpayment or underpayment at year end. It rejected, however, the method chosen by Iowa–Illinois to assess these charges among its customers. Rather than adopting the purchase deficiency model used by FERC, it ordered recovery on a volumetric or "throughput" basis, that is, by division among all customers (whether transport or sales) based on each unit of gas transported through the Iowa–Illinois system. As for collections already made, the board ordered no refund. It determined that the purchase deficiency method employed by Iowa–Illinois pursuant to the interim order was reasonable under the circumstances and resulted in no overcharges to transportation class members such as ADM.

Although a number of industrial consumers of natural gas had contested Iowa–Illinois' proposed recovery of take-or-pay costs before the board, only ADM sought judicial review of the agency's action in district court. ADM's principal complaint was that the collection method used by Iowa–Illinois, and approved by the board, constituted unlawful retroactive ratemaking. The Office of Consumer Advocate joined Iowa–Illinois in urging the court to reject this contention and uphold the board's decision. Deciding the method used was not retroactive ratemaking but a permissible assessment of current costs based on historical usage data, the district court affirmed. It is from this decision that ADM now appeals.

Our review is for the correction of errors at law. *Office of Consumer Advocate v. Iowa State Commerce Comm'n,* 432 N.W.2d 148, 152 (Iowa 1988).

*Issue on Appeal.*

■ On appeal, ADM challenges only the interim rate design permitted by the board, not the final order which permitted recovery of take-or-pay costs based on throughput from the date of its decision forward. Because ADM believes the purchase deficiency calculation underlying the interim order constitutes retroactive ratemaking, it contends that all sums collected pursuant to that order are invalid and subject to refund. *See Mid–Iowa Community Action, Inc. v. Iowa State Commerce Comm'n,* 421 N.W.2d 899, 901 (Iowa 1988) (board's regulatory power to set fees includes power to order refund for fees unlawfully charged). For the reasons that follow, we are persuaded ADM is not entitled to the refund it seeks because, as found by the board and district court, the surcharge merely permits recovery of a current gas expense, not a past loss.

It is a fundamental rule of utility regulation that retroactive ratemaking is not permitted. *Office of Consumer Advocate v. Iowa State Commerce Comm'n,* 428 N.W.2d 302, 306 (Iowa 1988). The rule is a logical extension of the "filed rate doctrine," that is, a regulated utility may not charge—nor be forced by the regulatory agency to charge—rates at variance with a filed tariff. *Associated Gas Distribs. v. Federal Energy Regulatory Comm'n,* 898 F.2d 809, 810 (D.C.Cir.1990); *see* Iowa Code § 476.5. The prohibition ensures the predictability and stability of utility rates and generally prevents utility companies from recovering losses that stem from "past company mismanagement or improper forecasting." *Office of Consumer Advocate,* 428 N.W.2d at 306. In other words, regulators "may not disinter the past merely because experience has belied projections, whether the advantage went to customers or the utility; bygones are bygones." *Associated Gas Distribs.,* 898 F.2d at 810.

As noted earlier in this opinion, however, the board may permit an adjustment in a utility's rates to reflect changes in its suppliers' rates so long as the utility

recover[s] from the customers only the actual costs of purchased gas and other *currently incurred charges* associated with the delivery, inventory or reservation of natural gas.

199 Iowa Admin.Code 19.10(3) (1989) (emphasis added); *see* Iowa Code § 476.6(11).

ADM contends the board may not rely on this regulatory vehicle to justify its action because the surcharge does not represent recovery of a current cost but an assessment to cover past losses. The retroactive nature of the interim order is demonstrated, ADM argues, by the fact that it permitted Iowa–Illinois to calculate individual customer assessments by comparing that customer's gas purchases during "normal" and "deficient" prior periods. Using this same rationale, the District of Columbia Circuit Court of Appeals recently struck down the purchase deficiency methodology authorized by FERC, ruling the mechanism violates the filed rate doctrine by effectively surcharging customers for gas previously purchased. *Associated Gas Distribs. v. Federal Energy Regulatory Comm'n*, 893 F.2d 349, 355 (D.C.Cir.1989). Because the district court did not follow this federal precedent and invalidate the interim order, ADM claims the court erred and must be reversed.

We find no error in the district court's decision. It wisely distinguished the federal case just cited by pointing out that while FERC arguably engaged in retroactive ratemaking when it permitted federally regulated pipeline companies to recover past take-or-pay losses through surcharges on LDCs, the Iowa Utilities Board stands in different shoes vis-a-vis its regulated utilities. We cannot improve on the district court's straightforward reasoning and repeat it verbatim here:

[T]he Iowa–Illinois surcharge, whether billed under a purchase deficiency or throughput rate design, is not a recovery of past losses of the utility. Iowa–Illinois was not a party to any take-or-pay contract with any natural gas producer. Iowa–Illinois is an LDC. Iowa–Illinois was current in its payments to its interstate pipeline supplier, NGPL, when the pipeline first surcharged Iowa–Illinois for its share of NGPL's take-or-pay settlement. While take-or-pay buyout and buydown may represent a past loss of NGPL pursuant to the pipeline's take-or-pay contracts with producers, it is not a past loss of Iowa–Illinois. The FERC–approved take-or-pay surcharge appearing on Iowa–Illinois' gas bill from NGPL is a current cost associated with the delivery of gas to Iowa–Illinois. The Iowa–Illinois surcharge approved by the board allows a recovery of a current expense in current rates. Thus, at the LDC retail level regulated by the board, the recovery of take-or-pay from customers of Iowa–Illinois is not retroactive ratemaking.

Moreover, the methodology used by the board to calculate the surcharge during the interim period would not, by itself, justify the total refund ADM seeks. As noted by the district court, the board was merely attempting "to assign the take-or-pay surcharge in accordance with factors that caused the problem—namely, purchases of gas on the spot market." Subsequent reconciliation revealed that the class actually benefited from surcharge calculations that rested on purchase deficiency rather than throughput. We also think it noteworthy that ADM has not appealed the final order compelling it to shoulder its share of the take-or-pay cost on a volumetric basis. Given the broad discretion accorded agency expertise regarding the manner in which refunds are determined, *Northwestern Bell Telephone Co. v. Iowa State Commerce Commission*, 359 N.W.2d 491, 500 (Iowa 1984), we find no merit in ADM's plea for reversal or refund on this ground.

In summary, the proper inquiry is whether or not the adjusted rate allowed by the board permitted unlawful recovery of a utility's past loss. *Office of Consumer Advocate*, 428 N.W.2d at 306. We are convinced the board and the district court focused correctly on the temporal significance of the charges in question. They correctly determined that Iowa–Illinois was seeking recovery of current charges that justified a purchased gas adjustment.

Thus we join the district court in affirming the decision of the agency in all respects.

AFFIRMED.