**TENNESSEE GAS TRANSMISSION COMPANY, A DIVISION OF TENNECO, INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Public Service Electric and Gas Company, Southern Natural Gas Company, Intervenors.**

No. 85–1201.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 10, 1986.

Decided April 29, 1986.

Jeffrey D. Komarow, with whom Dale A. Wright and Terence J. Collins, Washington, D.C., were on brief, for petitioner.

A. Karen Hill, Atty., Federal Energy Regulatory Commission, with whom William H. Satterfield, General Counsel and Jerome M. Feit, Solicitor, Federal Energy Regulatory Commission, Washington, D.C., were on brief, for respondent.

James J. Flood, Jr., Washington, D.C., with whom Donna°J. Bailey, Birmingham, Ala., was on brief, for intervenor, Southern Natural Gas Co.

James R. Lacey, Newark, N.J., entered an appearance, for intervenor, Public Service Electric and Gas Co.

Before MIKVA, GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

Dissenting opinion filed by Circuit Judge MIKVA.

SILBERMAN, Circuit Judge:

On November 17, 1983 petitioner Tennessee Gas Pipeline Co. filed with the Federal Energy Regulatory Commission (FERC) a new rate schedule setting forth the rates, terms, and conditions for interruptible transportation service (Rate Schedule IT). *See* 18 C.F.R. § 157.45 and Part 284 (1985). Under that rate schedule, Tennessee made available interruptible transportation service to pipeline customers and local distribution companies. Tennessee undertook to use its "best efforts" to provide this service.

As an incentive for Tennessee's interruptible transportation service customers to estimate their service requirements accurately, Tennessee required shippers that utilized the service for more than sixty days to pay a minimum bill, even if their actual usage of the service would have warranted a smaller bill.[1]

On December 28, 1981 FERC accepted the Rate Schedule IT tariff sheets for filing and allowed them to go into effect subject to refund. FERC consolidated the Rate Schedule IT matter with other pending rate matters involving Tennessee in an order issued January 25, 1982, and later added another Tennessee matter, a general rate increase, to the matters already consolidated.

On November 29, 1983 Tennessee filed with FERC a Stipulation that settled or established procedures to resolve all the consolidated matters then pending. The Commission approved the Stipulation. FERC subsequently issued an order, and later a second clarifying order, interpreting the Stipulation to require Tennessee to refund minimum bill charges under Tennessee's Rate Schedule IT for the period February 1, 1983 to December 31, 1983. Tennessee petitioned this court to reverse and set aside the orders to the extent that they require IT minimum bill refunds. We now do so.

In *Kansas Cities v. FERC*, 723 F.2d 82 (D.C. Cir.1983), we stated that FERC's interpretation of a contract is entitled to deference if " 'amply supported both factually and legally.' " *Id.* at 87 (quoting *United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div.*, 358 U.S. 103, 114, 79 S.Ct. 194, 200, 3 L.Ed.2d 153 (1958)). It is unnecessary to decide in this case whether *Kansas Cities*, a case involving interpretation of a contract between a utility and municipalities, governs a case in which FERC's staff is a party. We think it inappropriate to defer to FERC's interpretation in any event because the Commission has vacillated in articulating a rationale for its result. · FERC's first order relied on a concededly mistaken construction by the Commission of one of its own regulations; its clarifying order relied on Articles II and

---

1. The minimum bill charges were computed according to a formula based on 66⅔ percent of the maximum daily transportation quantity stated in the shippers' service agreements with Tennessee.

III "read together"; and on appeal, FERC's counsel relied on the "plain meaning" of Article III.[2] This removes the usual presumption of deference that attends administrative decisions made in the exercise of the agency's delegated authority. FERC's handling of the case demonstrates tenacious dedication to a particular result—which the Commission later enshrined as policy when it determined in 1985 that the IT minimum bill was unjust and unreasonable, *see* Opinion No. 240, *Tennessee Gas Pipeline Co.*, 32 F.E.R.C. ¶ 61,086 (1985), *aff'g in part Tennessee Gas Pipeline Co.*, 25 F.E.R.C. ¶ 63,052 (1983)—but does not constitute the kind of reasoned decision-making to which we will defer. *See Mobil Oil Corp. v. Federal Power Comm'n*, 570 F.2d 1021, 1025–26 (D.C. Cir.1978) (inconsistency in FERC's orders construing settlement agreement demonstrates irrationality). FERC may not, of course, directly or indirectly rely on Opinion No. 240 in interpreting the Stipulation to give the later enacted policy retroactive effect.

█ Turning to the merits of the interpretation issue, we note first that the Stipulation is somewhat ambiguous as to the issue before us. We conclude, however, that Tennessee's interpretation is decidedly the more reasonable. First, nowhere in the Stipulation is there stated a positive obligation to refund the minimum bill charges. This is in contrast with the explicit refund obligations enumerated in Article II, section 7, and Article III, section 3. Second, we find unpersuasive FERC's most prominent group of arguments, that various provisions of Articles II and III construed together mandate elimination of the minimum bill from the tariff for the entire docket period and therefore require a re-

fund. We conclude that the controlling provisions are the more specific ones by which Tennessee is directed to eliminate the minimum bill (Art. III, § 2(i)) and to file, *after* the effective date of the Stipulation, revised tariff sheets reflecting that change. Art. II, § 5. The revised tariff sheets were expressly given prospective effect. Art. II, § 6.

We have reviewed all of the Commission's arguments in defense of its interpretation, but find them unconvincing. Therefore, we reverse the Commission's orders to the extent that they require Tennessee to refund minimum bill charges under its Rate Schedule IT.

*So ordered.*

MIKVA, Circuit Judge, dissenting:

Interpreting the Stipulation filed by Tennessee Gas Pipeline Company, the Commission ruled that it did not authorize collection of a minimum bill for the pipeline's interruptible-transport (IT) service from February 1 to December 31, 1983. The Commission therefore ordered petitioner to make refunds of minimum bill charges it had collected in connection with its IT service during that period. The majority decision reverses the Commission's order, stating that "the Commission has vacillated in articulating a rationale for its result." I find in the record, however, no such fatal wavering on the part of the Commission. In its clarifying order, the Commission simply corrected the grounds it had previously offered for its refund order. The Commission confessed that it had erred in determining that Article III, section 3 of the Stipulation imposed a general obligation upon Tennessee to make refunds to all categories of IT shippers. In defense of its

---

**2.** Counsel's "plain meaning" argument is related to but distinct from the Commission's "read together" rationale. Both rely on Article II's definition of the docket period, and on Article III, section 2(i) which directs Tennessee to revise its IT Rate Schedule to eliminate the minimum bill. But the Commission relied on Article II, section 7 as authority for the refund requirement, whereas counsel argued that elimination of the minimum bill for the entire docket

period meant that "there is no basis in the filed rate for those charges after [February 1, 1983] and refunds must be made." Respondent's Br. at 10. The Commission's action must stand, of course, on its own reasoning. Counsel's post hoc rationalizations cannot sustain it. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983).

refund order, the Commission then articulated a reasonable reading of the Stipulation.

The Commission stated that Articles II and III of the Stipulation, read together, require Tennessee to delete the minimum bill provision from the IT rate schedule for the eleven-month docket period in 1983. The Commission reasoned that Article II, sections 2 and 3 require Tennessee, in calculating its settlement rates for this period, to reflect the Interim Methods set forth in Article III, section 2. One of these Interim Methods included Tennessee's commitment to revise its IT rate schedule in order to eliminate the minimum bill. Thus the Stipulation bound Tennessee to eliminate the minimum bill charge from its tariff for the entire docket period, and to refund amounts attributable to that minimum bill.

This interpretation is entitled to judicial deference; the Commission's adherence to the result it originally reached, which the majority tries to stigmatize as "tenacious dedication to a particular result," provides no sound reason for suspending the deference due to an agency's determination within its expertise.

In clarifying its order, the Commission admitted error and corrected itself. The Commission's amended rationale for its order is reasonable and should be affirmed.