Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the
Clerk of any formal errors in order that corrections may be made before the
bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 18, 2004        Decided January 21, 2005

No. 03-1340

BURLINGTON RESOURCES OIL & GAS COMPANY L.P.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

NORTHERN NATURAL GAS COMPANY, ET AL.,
INTERVENORS

Consolidated with
No. 03-1432

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

*Thomas J. Eastment* argued the cause and filed the briefs for
petitioner.

*Judith A. Albert*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

*Frank X. Kelly*, *Steve Stojic*, *J. Gregory Porter*, *James F. Moriarty*, *R. Bruce Beckner*, *David D'Alessandro,* and *John E. McCaffrey* were on the brief for intervenors Northern Natural Gas Company, et al. in support of respondent. *Marie D. Zosa* entered an appearance.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This petition for review involves one of several efforts to resolve long-standing disputes related to the refunds due to customers for *ad valorem* taxes collected in excess of maximum lawful price ceilings under section 504(a)(1) of Title V of the Natural Gas Policy Act ("NGPA"), 15 U.S.C. § 3414(a)(1) (1989). *See, e.g., Pub. Serv. Co. of Colo. v. FERC*, 91 F.3d 1478 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1224 (1997). Burlington Resources Oil and Gas Company L.P. petitions for review of six orders of the Federal Energy Regulatory Commission having the end result that Burlington must refund certain *ad valorem* taxes it collected from two pipeline gas purchasers pursuant to take-or-pay natural gas sales contracts.[1] The Commission declined to enforce the release and

---

[1] *Burlington Res. Oil & Gas Co. L.P.*, 102 F.E.R.C. ¶ 61,003 (2003); *Burlington Res. Oil & Gas Co. L.P.*, 103 F.E.R.C. ¶ 61,005 (2003); *Burlington Res. Oil & Gas Co. L.P.*, 104 F.E.R.C. ¶ 61,317 (2003); *Panhandle Eastern Pipe Line Co.*, 103 F.E.R.C. ¶ 61,002 (2003); *Panhandle Eastern Pipe Line Co.*, 103 F.E.R.C. ¶ 61,007 (2003); *Panhandle Eastern Pipe Line Co.*, 105 F.E.R.C. ¶ 61,141

indemnity clauses in the take-or-pay contract settlement agreements between Burlington and the two pipelines because it concluded that to do so would allow Burlington to retain revenues collected in excess of the price ceilings in section 504(a) of the NGPA. Yet the Commission approved Omnibus Settlement Agreements allowing some producers to avoid full or partial refunds of revenues collected from pipelines in excess of the section 504 price ceilings. The important question left unanswered by the Commission in the challenged Orders is how, in light of the Commission's approval of the Omnibus Settlement Agreements, the rule in the Orders under review can be correct. We grant the petition and remand the case to the Commission for a more adequate explanation.

## I.

The background to NGPA's ceiling prices for first sales of natural gas is set forth in *Colorado Interstate Gas Co.*, 67 F.E.R.C. ¶ 61,209, 61,652 (1994). Following a remand in that case, the Commission determined that the *ad valorem* tax imposed by the State of Kansas did not qualify as a reimbursable severance tax under section 110 of the NGPA, 15 U.S.C. § 3220(a)(1), and ordered producers to refund to pipelines, as of 1998, revenues collected in excess of the ceiling price. *Colo. Interstate Gas Co. v. FERC*, 65 F.E.R.C. ¶ 61,292 (1993), *reh'g denied*, 67 F.E.R.C. ¶ 61,209 (1994). This court upheld as reasonable the Commission's tax determination, but held that the refunds accrued as of October 1983, when the reimbursement was first challenged. *Pub. Serv. Co. of Colo.*, 91 F.3d at 1488-91.

On September 10, 1997, the Commission ordered the pipelines to serve upon first sellers of gas a statement of refunds due for the Kansas *ad valorem* tax reimbursements collected by

(2003).

first sellers for 1983-1988. *Pub. Serv. Co. of Colo.*, 80 F.E.R.C. ¶ 61,264, 61,955 (1997). The Commission also ordered any first seller that had collected revenues in excess of NGPA ceiling prices, as a result of reimbursement of Kansas *ad valorem* taxes, to refund such excess revenues to the pipeline purchasers, with interest. *Id.*

Prior to that time, the Northern Natural Gas Company ("Northern") in 1987, and the Panhandle Eastern Pipeline Company ("Panhandle") in 1992, had entered into separate take-or-pay Settlement Agreements with Burlington's predecessor in interest to resolve claims and controversies involving multiple gas purchase contracts. For the general background to these controversies, see *Associated Gas Distributors v. FERC*, 893 F.2d 349, 353 (D.C. Cir. 1989) ("*AGD*"). Each agreement included a release and indemnity clause. Thus, the Panhandle clause provided:

> Except for the obligations and rights specifically provided for in this . . . Agreement, Buyer and Seller hereby forever release, discharge, waive and indemnify each other from and against all claims, demands, causes of action, damages, liabilities, expenses or payments known or unknown, present or future, that each has or may have had against the other party relating to all the above referenced contracts.

Panhandle 1992 Settlement Agreement at ¶ 7. The referenced gas contracts were those through January 31, 1993 for Panhandle and through January 31, 1989 for Northern. When Burlington received statements of *ad valorem* refunds claimed by Northern and Panhandle, it denied any responsibility for the refunds, referencing the indemnity clauses in the 1989 and 1992 Settlement Agreements. Northern and Panhandle filed protests

with the Commission, and on May 12, 1999, Burlington filed a Request for Resolution by the Commission.

Northern and Panhandle also filed in 2000 and 2001, respectively, for Commission approval of Omnibus Settlement Agreements, which settled their *ad valorem* refund claims under take-or-pay contracts against certain producers, and reduced or eliminated *ad valorem* refund claims against other producers. Panhandle's Omnibus Settlement Agreement, for example, involved 34 producer parties and 14 non-producer parties. Large first sellers (i.e., those with a maximum refund liability greater than $400,000) agreed to pay 75% of their refund amount (less amounts previously paid), while smaller first sellers received a monetary credit of either $50,000 or $100,000, and those with refund liability of less than $50,000 were exempt from Kansas *ad valorem* tax refund liability. Northern's Omnibus Settlement Agreements had similar provisions. Both Omnibus Settlement Agreements included provisions for mutual release from liability. Panhandle and Northern claimed the settlements obviated the need for protracted and costly litigation while providing relief to customers. *Panhandle Eastern Pipeline Co.*, 96 F.E.R.C. ¶ 61,274, 62,039; *N. Natural Gas Co.*, 93 F.E.R.C. ¶ 61,311, 62,073.

On December 27, 2000, the Commission approved the Omnibus Settlement Agreements, citing its "wide discretion" to approve settlements and the strong public policy interests in support of settling complex matters in order to avoid the costs and burdens of litigation and to mitigate administrative burdens. *Panhandle Eastern Pipeline Co.*, 96 F.E.R.C. at 62,039; *N. Natural Gas Co.*, 93 F.E.R.C. at 62,075. The Commission observed that the Omnibus Settlement Agreements are "a reasonable compromise to resolve long, drawn-out complex proceedings," and that Commission approval "will permit a substantial amount of the overcharges to be flowed through to

consumers during the current heating season when gas prices are expected to be higher than in recent years, while providing relief to Settling Parties, small producers, and royalty owners." *N. Natural Gas Co.*, 93 F.E.R.C. at 62,076; *see Panhandle Eastern Pipe Line Co.*, 96 F.E.R.C. ¶ 61,274, 62,043, *clarified*, 97 F.E.R.C. ¶ 61,015, 62,044 (2001). The Commission also stated that it "is once again heartened by the parties' success in resolving virtually all the refund claims in this proceeding through settlement, and encourages similar efforts . . . pending with other pipelines." *N. Natural Gas Co.*, 93 F.E.R.C. at 62,075; *see Panhandle Eastern Pipe Line Co.*, 96 F.E.R.C. at 62,044. In each instance, the Commission noted that its approval was without prejudice to producers, such as Burlington, who opted out of the Omnibus Settlements.

Thereafter, the Commission proceeded in a parallel fashion to address Northern's and Panhandle's refund claims against Burlington. On January 2, 2003, the Commission issued two of the challenged orders, establishing hearings to "resolve all issues concerning the *ad valorem* tax refunds owed to [Northern and Panhandle] that have not yet been resolved by settlement." *Burlington Res. Oil & Gas Co.*, 102 F.E.R.C. ¶ 61,003, 61,005 (2003); *Panhandle Eastern Pipe Line Co.*, 102 F.E.R.C. ¶ 61,002, 61,004 (2003). Burlington moved for rehearing, and on April 1, 2003, the Commission, in two other challenged orders, granted rehearing and removed Burlington from the hearing order because Burlington claimed there were no material issues of fact to be decided. *Burlington Res. Oil & Gas Co.*, 102 F.E.R.C. ¶ 61,005 (2003) ("*April 1 Northern Order*"); *Panhandle Eastern Pipe Line Co.*, 103 F.E.R.C. ¶ 61,007 (2003) ("*April 1 Panhandle Order*").

In the April 1 rehearing orders, the Commission questioned whether the indemnity clauses in the Settlement Agreements with Northern and Panhandle had the meaning Burlington

attributed to them, namely that it indemnifies Burlington for any *ad valorem* tax refund liability and imposes that liability on the pipelines. Declining to interpret the clauses, however, the Commission stated that "even if the clause could be read as having that meaning, Burlington cannot prevail on its request to be relieved of the *ad valorem* refund liability." *April 1 Panhandle Order*, 103 F.E.R.C. at 61,007. The Commission explained that it had "stated in *Anadarko* [*Petroleum Corp.*, 86 F.E.R.C. ¶ 61,040 (1999),] that the buyer in a first sale cannot agree 'to pay more than the [NGPA ceiling price],' and thus any agreement to do so 'is unenforceable.'" *Id.* (quoting *Anadarko*, 86 F.E.R.C. at 61,158). The Commission also relied on *Williams Natural Gas Co.*, 67 F.E.R.C. ¶ 61,153 (1994), in which it explained it had rejected the argument that take-or-pay settlements could relieve producers of the liability for *ad valorem* tax refunds relating to those contracts. *Id.* (citing *Williams*, 67 F.E.R.C. at 61,450). The Commission distinguished its approval of the Omnibus Settlement Agreements as involving producers who agreed to immediate payment of a substantial part of the refund in dispute, whereas Burlington sought to be relieved from full refund liability. The Commission also distinguished the pipeline/consumer settlements it had approved as involving pipeline flow-through to customers governed by the Natural Gas Act, 15 U.S.C. § 717, which unlike section 504(a) of the NGPA, does not set ceiling prices. The Commission denied Burlington's alternative request that it be relieved of any obligation to pay interest, on the ground the request was a collateral attack on the Commission's orders in *Public Service* denying such waivers, and Burlington had not shown hardship or inequity under section 502(c) of the NGPA, 15 U.S.C. § 3412(c). Burlington sought rehearing.

In the final two orders challenged in the petition for review, the Commission denied rehearing, affirming its April 1 Orders. *Burlington Res. Oil & Gas Co.*, 104 F.E.R.C. ¶ 61,317, 62,190-

91 (2003) ("*Northern Rehearing*"); *Panhandle Eastern Pipe Line Co.*, 105 F.E.R.C. ¶ 61,141, 61,787 (2003) ("*Panhandle Rehearing*"). Regarding Northern's refund request, the Commission rejected Burlington's argument that the Commission's interpretation of section 504(a) of the NGPA as barring enforcement of the release and indemnity clause conflicted with its approval of the analogous Northern Omnibus Settlement Agreements, stating that it has "a degree of prosecutorial discretion in determining how to expend its resources in the enforcement of those ceiling prices." *Northern Rehearing*, 104 F.E.R.C. at 62,191. The Commission distinguished its waiver of partial liability for some producers in those settlements on the ground that the pipelines, producers and customers were all parties to the settlements, and by waiving a small portion of the refunds the pipelines were able to collect larger amounts without further delay, thus collecting "the maximum amount of refunds practical." *Id.* "Where the customers agree to the waiver of part of the claimed refund amount, which amount producers were contesting, the Commission may accept the settlement in the exercise of its prosecutorial discretion to resolve a controversy without the undue expenditure of resources." *Id.* By contrast, Burlington's Settlement Agreements with Northern and Panhandle did not involve customers and was a private agreement not filed with the Commission for approval. Had Northern filed to flow through the costs of settlement pursuant to Order Nos. 500/528 or Order No. 636, the Commission explained the only issue would be the prudence of the settlement. Noting further that Burlington could have joined the Omnibus Settlement Agreements and paid less than the full amount Northern claimed it owed, the Commission observed that Burlington sought "complete elimination of the obligation." *Id*. The Commission dismissed Burlington's reliance on *El Paso Natural Gas Co.*, 85 F.E.R.C. ¶ 61,003 (1998), *Natural Gas Pipeline Co. of America*, 85 F.E.R.C. ¶ 61,004 (1998), and *ANR Pipeline Co.*, 85 F.E.R.C.

¶ 61,005 (1998), because those cases involved pipeline/customer agreements governed by the NGA. The Commission again denied Burlington equitable relief under section 502(c).

Regarding Panhandle's refund request, the Commission further explained that by encouraging settlements, it did not intend for NGPA ceiling prices to be exceeded. Departing from its position in the April 1 Orders that it would not interpret the indemnity clauses, the Commission concluded that while the clauses "obviously relate to claims arising from the contract between the parties," the *ad valorem* tax refunds arise from a Commission order rather than a claim between the parties and thus applied "regardless of the terms of any contract the parties may have entered into." *Panhandle Rehearing*, 105 F.E.R.C. at 61,788. The Commission observed that the pipelines were merely the vehicle for enforcing the Commission's order and respect for the NGPA ceiling prices.

## II.

On petition, Burlington principally contends that the Commission's position, that the 1989 and 1992 Settlement Agreements did not provide a lawful or equitable basis to shift *ad valorem* tax refund liability to Northern and Panhandle, is unsupported by a reasoned explanation and is inconsistent with the Commission's approval of the Omnibus Settlement Agreements. In Burlington's view, the Commission erred by failing to exercise its prosecutorial discretion to enforce the release and indemnity clauses in the Northern and Panhandle Settlement Agreements, which were good faith, arms-length gas sales contract settlements under which Burlington provided the pipelines with valuable consideration, including a substantial reduction in the pipelines' take-or-pay liability, contract reformation in future prices and pipeline take obligations, and reciprocal releases and indemnifications. It also erred, according to Burlington, by viewing the settlements as stand-

alone contracts, failing to acknowledge that the refund obligations arise from the take-or-pay contracts addressed in the Settlement Agreements.

Section 504 of the NGPA makes it "unlawful for any person . . . (1) to sell natural gas at a first sale price in excess of any applicable maximum lawful price under this Act." NGPA § 504(a), 15 U.S.C. § 3414(a) (1989). The Commission interpreted section 504(a) to bar Burlington's interpretation of the release and indemnity clauses because, in its view, the interpretation would allow Burlington to retain *ad valorem* taxes collected from Northern and Panhandle in excess of applicable price ceiling. It relied on two decisions. First, in *Anadarko*, 86 F.E.R.C. ¶ 61,040, the Commission ruled that while Anadarko could seek recovery in the federal district court regarding the contract indemnification interpretation it presented as a defense to refund liability, it must pay, as the first seller of natural gas, refunds to Panhandle, from which it had spun off in 1985, or violate the NGPA. *Id.* at 61,158. On rehearing the Commission stated that it did not rely on Anadarko's interpretation of the indemnity clause in the 1986 spin-off agreement as a release from refund liability, explaining that "an agreement by the buyer, here Panhandle, to be responsible for any refund would in effect be an illegal agreement to pay more than the MLP, and thus unenforceable." *Id.* at 61,157. Because the case did not involve gas-sales contracts between a producer and a pipeline but "a series of complex corporate arrangements" in which each side disputed the other side's interpretation of who was responsible for first sale tax refund liability, the Commission confined its role to determining which party, the first seller or its successor in interest, was initially liable for the refund. *Id.* In the second case, *Williams Natural Gas Co.*, 67 F.E.R.C. ¶ 61,153, the Commission ruled that irrespective of any agreement by customers to the contrary, producers must make *ad valorem* refunds to remedy violations of NGPA ceiling prices. *Id.* at

61,450. Declining to stay the deadline for challenging the prudence of Williams' settlement agreements with producers, the Commission explained a stay was unnecessary because "take-or-pay or [Gas Supply Realignment] settlements between pipelines and their producer/suppliers cannot interfere with refunds required by the Commission to remedy violation of NGPA ceiling prices, or with the flowthrough of such refunds by the pipelines to their customers." *Id.*

Neither *Anadarko* nor *Williams* addresses whether a pipeline "may lawfully agree to release and indemnify a producer for the obligation to refund amounts paid to the producer in excess of NGPA ceiling prices in exchange for valuable consideration under a good faith arm's-length gas sales contract settlement." Petitioner's Br. at 22. But even if those Commission orders were on point, the Commission would not be absolved of its obligation, in the face of Burlington's challenges, to justify the basis for the rule announced in those cases and applied in the orders under review.

The Commission's Orders patch together a variety of arguments for rejecting Burlington's claim that its Settlement Agreements with Northern and Panhandle release it from "all" claims arising from the underlying take-or-pay contracts, including excess *ad valorem* refund claims by the pipelines. But none of the challenged Orders explain how the rule applied by the Commission to the 1989 or 1992 Settlement Agreements is consistent with its approval of the pipelines' Omnibus Settlement Agreements allowing some producers to escape all or partial liability for *ad valorem* tax refunds. The Commission's position that its encouragement of settlement of take-or-pay liability did not intend for NGPA ceiling prices to be exceeded begs the question of how it could approve the Omnibus Settlements Agreements, although such settlements would likewise violate section 504(a) of the NGPA under the

Commission's interpretation here. To the extent the Commission explained that its approval of the Omnibus Settlement Agreements reflected prosecutorial discretion, its explanation betrays a recognition that section 504 of the NGPA does not render unlawful all private agreements allowing a producer to retain funds collected pursuant to unlawfully high prices. Moreover, the Commission fails to explain why, in light of the substantial consideration paid by Burlington, in part for release and indemnification by Northern and Panhandle for all claims arising from the take-or-pay contracts, it refused to exercise its prosecutorial discretion to give effect to the release and indemnity clauses in the 1989 and 1992 Settlement Agreements. The Commission fails, then, to provide a reasoned basis in the challenged Orders for its differing views of the enforceability of such settlement agreements. *See Balt. Gas & Elec. Co. v. FERC*, 26 F.3d 1129, 1135 (D.C. Cir. 1994); *Nat'l Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1569 (D.C. Cir. 1987) (citing *Tenn. Gas Transmission Co. v. FERC*, 789 F.2d 61, 62-63 (D.C. Cir. 1986)).

The reasoning underlying the Commission's interpretation of the release and indemnity clauses as not covering *ad valorem* tax refunds is obscure; while a Commission order directed the refunds, the parties' take-or-pay contracts formed the basis for Northern's and Panhandle's refund claims against Burlington. As Burlington suggests, the Commission reads too much into the language limiting the release and indemnification to claims between the parties relating to the contracts; the contract language does not reasonably permit exclusion of any claim that relates to payments made under the contracts. The Commission's attempt to avoid the breadth of the release and indemnity provision by suggesting that Panhandle is not the claimant, but simply a vehicle for Commission enforcement ignores the dual nature of the claim. While the Commission seeks to enforce the NGPA ceiling prices, Panhandle's claim

arises as a gas purchaser that made *ad valorem* tax payments to Burlington, and both its claim and any Burlington liability not only arise from the NGPA but also relate to the contracts under which the payments were made.

Because the Commission has failed to provide "a reasoned and consistent explanation to which we can defer," *AGD*, 893 F.2d at 361, we grant the petition and remand the case for further proceedings.  We do not decide whether there could be a legally relevant distinction between the Northern and Panhandle Settlement Agreements and the Omnibus Settlement Agreements, because pursuant to *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), the court will not consider any distinction not offered by the Commission.  Given our disposition, we do not address Burlington's claim under section 502(c) of the NGPA, 15 U.S.C. § 3412(c).

*So ordered.*